FILED
COURT OF APPEALS
DIVISION II

2014 JUL 15 AM 10: 45

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 44549-2-II |
| Respondent, | |
| v. | |
| JONATHAN W. BROOKS, | UNPUBLISHED OPINION |
| Appellant. | |

WORSWICK, J. — Jonathan Brooks appeals his convictions and sentence for manufacture of a controlled substance, unlawful possession of a controlled substance, and two counts of bail jumping. Brooks argues that (1) the trial court erred by denying his motion to suppress evidence found during a search of his property because the search warrant lacked the support of probable cause, (2) Brooks received ineffective assistance of counsel at sentencing, and (3) the sentencing court erroneously imposed a community custody condition. We hold that probable cause supported the search warrant and the sentencing issues are moot. We affirm.

## FACTS

In March 2012, the West Sound Narcotic Taskforce received an anonymous tip regarding a possible marijuana grow operation located inside a single-wide mobile home in Tahuya, Mason County. The tipster reported that the odor of marijuana emanated from the home and that the windows were covered with Styrofoam. Through a search of public records, police officers learned that Brooks lived in the mobile home and that he had been convicted of a drug felony in Idaho in 2008.

After receiving the tip, Trooper Ryan Los and Detective Tasesa Maiava went to the mobile home to conduct a "knock and talk" operation. Second Suppl. Clerk's Papers at 4. Although Trooper Los did not detect an odor from the driveway, as he approached the mobile home he smelled the obvious odor of growing marijuana, which he had been trained to identify. He observed that the mobile home's windows were covered with pink Styrofoam insulation and plastic sheathing. He further heard the hum of fans and ballasts coming from inside the mobile home.

No one answered when the officers knocked on the door. But the officers contacted a neighbor who owned the mobile home and rented it to Brooks. The neighbor told the officers he did not know if Brooks had medical authorization to possess or grow marijuana.

Trooper Los applied for a search warrant based on his observations and his knowledge from training and experience that marijuana grow operations often employed insulation, window coverings, fans, and ballasts. A superior court judge issued the warrant authorizing a search of the mobile home for evidence of violations of the Uniform Controlled Substances Act, chapter 69.50 RCW.

The officers executed the search warrant the following day. Brooks was present at the time of this search, and he displayed a card showing that he was an authorized medical marijuana user. Nonetheless, the officers searched the mobile home and found approximately 90 marijuana plants inside.

While executing the warrant, Detective Maiava also noticed a small detached shed on the property. From outside the shed, Detective Maiava, who was trained to recognize the smell of marijuana and the methods of growing marijuana, heard a humming sound consistent with fans

and ballasts. He also smelled the odor of growing marijuana coming from a vent attached to the shed.

By telephone, Detective Maiava requested the expansion of the search warrant to include the detached shed.[1] The superior court judge granted this request.

The officers found more plants inside the shed. The officers found a total of 111 marijuana plants on Brooks's property.

By second amended information, the State charged Brooks with five counts: manufacture of a controlled substance, marijuana; unlawful possession of a controlled substance, marijuana; possession with intent to manufacture or deliver a controlled substance, marijuana; and two counts of bail jumping. The trial court refused to allow Brooks to raise his medical marijuana authorization as a defense because he exceeded the maximum number of plants that a medical marijuana user may possess.[2]

Before trial, Brooks moved to suppress the evidence obtained during the search on the ground that the search warrant lacked the support of probable cause. The trial court denied this motion and Brooks's subsequent motion to reconsider.

---

[1] Detective Maiava did not inform the superior court judge that Brooks had presented a medical marijuana card.

[2] Brooks asserts that the trial court also based its ruling on its erroneous belief that Brooks's medical marijuana authorization card would be inadmissible hearsay. But the trial court assumed for the sake of argument that the card would be admissible. Regardless, the trial court ruled that the excessive number of plants prevented Brooks from making a prima facie showing of the medical marijuana defense. Brooks does not challenge this ruling.

At the end of trial, a jury convicted Brooks of manufacture of a controlled substance, unlawful possession of a controlled substance, and both counts of bail jumping. But the jury acquitted Brooks of possession with intent to manufacture or deliver a controlled substance.

At sentencing, Brooks's attorney did not argue that any of Brooks's convictions constituted the same criminal conduct. Accordingly, in calculating Brooks's offender score, the trial court did not treat any of his convictions as the same criminal conduct. Brooks was sentenced on each conviction to a standard range sentence of 13 months, to be served concurrently.

The trial court further ordered a 12-month term of community custody, subject to various conditions. One condition prohibited Brooks from consuming or possessing alcohol.

Brooks appeals.

## ANALYSIS

### I. PROBABLE CAUSE SUPPORTING SEARCH WARRANT

Brooks first argues that his convictions for manufacture of a controlled substance and possession of a controlled substance should be reversed because the trial court erred by denying his motion to suppress evidence seized under a warrant issued without probable cause. We disagree.

Both the Fourth Amendment and article I, section 7 of the Washington Constitution prohibit unreasonable searches. *State v. Patterson*, 83 Wn.2d 49, 52, 515 P.2d 496 (1973). But when a search is conducted pursuant to a valid warrant based on probable cause, the search is reasonable and therefore constitutional. *Patterson*, 83 Wn.2d at 52.

Two different standards govern our review of a probable cause determination. *State v. Emery*, 161 Wn. App. 172, 201, 253 P.3d 413 (2011), *aff'd*, 174 Wn.2d 741 (2012). First, we review a magistrate's findings of "the 'historical facts' in the case, i.e., the events 'leading up to the stop or search,'" for an abuse of discretion, giving due deference to the magistrate. *In re Det. of Petersen*, 145 Wn.2d 789, 799-800, 42 P.3d 952 (2002) (quoting *Ornelas v. United States*, 517 U.S. 690, 696, 116 S. Ct. 1657, 134 L. Ed. 2d 911 (1996)). Second, we review de novo the trial court's legal conclusion that the facts establish probable cause. *State v. Chamberlin*, 161 Wn.2d 30, 40, 162 P.3d 389 (2007). Here, because Brooks challenges only the legal conclusion that probable cause supported the search warrant, we apply the second standard.

In reviewing this legal conclusion, we consider only the information presented to the magistrate in support of the warrant application. *State v. Murray*, 110 Wn.2d 706, 709-10, 757 P.2d 487 (1988). Probable cause exists when the supporting facts establish a reasonable inference that evidence of criminal activity can be found at the place to be searched. *State v. Maddox*, 152 Wn.2d 499, 505, 98 P.3d 1199 (2004). But the probable cause standard does not require a prima facie showing of criminal activity. *Maddox*, 152 Wn.2d at 505. Further, the availability of an affirmative defense does not vitiate the existence of probable cause. *State v. Fry*, 168 Wn.2d 1, 8, 228 P.3d 1 (2010) (lead opinion) (citing *McBride v. Walla Walla County*, 95 Wn. App. 33, 39-40, 975 P.2d 1029, 990 P.2d 967 (1999)).

In *Fry*, our Supreme Court considered whether a former version of the Medical Use of Cannabis Act, chapter 69.51A RCW, added to the showing necessary to establish probable cause of unlawful marijuana possession. 168 Wn.2d at 5-10 (lead opinion). In former RCW 69.51A.040(1) (1999), the legislature established an affirmative defense to marijuana-related

charges; this defense was available to a qualifying patient or caregiver who complied with the Act's requirements. *See Fry*, 168 Wn.2d at 7. But *Fry*'s lead opinion, signed by four justices, reasoned that the legislature did not alter the showing needed to establish probable cause by creating this affirmative defense. *Fry*, 168 Wn.2d at 10. Thus the *Fry* court affirmed the denial of the defendant's motion to suppress evidence obtained pursuant to the search warrant.[3] 168 Wn.2d at 3, 10.

After *Fry* was decided, the legislature substantially amended the Medical Use of Cannabis Act. LAWS OF 2011, ch. 181. As currently written, RCW 69.51A.040 declares, "The medical use of cannabis in accordance with the terms and conditions of this chapter does not constitute a crime . . . ."[4] The legislature further declared,

> Nothing in this chapter or in the rules adopted to implement it precludes a qualifying patient or designated provider from engaging in the private, unlicensed, noncommercial production, possession, transportation, delivery, or administration of cannabis for medical use as authorized under RCW 69.51A.040.

---

[3] As to this issue, four other justices "concur[red] with the lead opinion in result only." *Fry*, 168 Wn.2d at 20 (Chambers, J., concurring). The lone dissenter would have held that the warrant lacked the support of probable cause. *Fry*, 168 Wn.2d at 23 (Sanders, J., dissenting).

[4] RCW 69.51A.040 further states that a medical marijuana patient or provider "may not be arrested, prosecuted, or subject to other criminal sanctions or civil consequences" *if* (1) the use, manufacture, or possession of marijuana complies with the requirements of chapter 69.51A RCW *and* (2) the patient or provider, inter alia, presents proof of registration as a medical marijuana patient or provider. Here, Brooks concedes that he had more marijuana plants than chapter 69.51A RCW allows, but he claims that this fact was unknown to the magistrate at the time the warrant was authorized. However, the governor vetoed sections of the 2011 bill that would have established a registry of patients and providers. LAWS OF 2011, ch. 181, governor's veto message at 1374-75. Because no registry exists, RCW 69.51A.040 does not offer protection from all criminal or civil consequences of marijuana possession. *State v. Reis*, ___ Wn. App. ___, 322 P.3d 1238, 1246 (2014), *petition for review filed,* No. 90281-0 (Wash. May 27, 2014). But unregistered patients and providers have an affirmative defense under RCW 69.51A.043. *Reis*, 322 P.3d at 1245.

RCW 69.51A.025.

Brooks asserts that the statutory amendments buttressed the affirmative defense with "an explicit exception to the general prohibition on possession of controlled substances." Br. of Appellant at 9. But Divisions One and Three of this court have recently considered the amended statute and decided that it continues to merely provide an affirmative defense to marijuana-related crimes. *State v. Reis*, ___ Wn. App. ___, 322 P.3d 1238, 1244 (2014), *petition for review filed*, No. 90281-0 (Wash. May 27, 2014); *State v. Ellis*, 178 Wn. App. 801, 806, 315 P.3d 1170 (2014), *review denied*, No. 89928-2 (Wash. June 6, 2014). We follow those decisions.[5]

Given *Fry*'s holding that the availability of an affirmative defense cannot vitiate probable cause, we hold that the State may obtain a search warrant without excluding the possibility that marijuana is lawfully possessed under chapter 69.51A RCW. *Reis*, 322 P.3d at 1246; *accord Ellis*, 178 Wn. App. at 807. Thus we reject Brooks's assertion that, to establish probable cause, the supporting affidavit must show that the cultivation of marijuana was not lawful under chapter 69.51A RCW.[6]

As Brooks concedes, the police officers' sworn statements established probable cause to believe that marijuana was being grown inside the mobile home and detached shed. The police

---

[5] In his reply brief, Brooks cites *State v. Kurtz*, 178 Wn.2d 466, 476, 309 P.3d 472 (2013), and asserts that the statutory amendments "made marijuana use under the Act 'legal' rather than merely providing an affirmative defense." Reply Br. of Brooks at 1-2. But *Kurtz* cannot be read to stand for this proposition. *Reis*, 322 P.3d at 1245.

[6] We also reject Brooks's assertion that, to the extent RCW 69.51A.040 is ambiguous, it should be interpreted in his favor. Because RCW 69.51A.040 is not ambiguous, the rule of lenity does not apply here. *Reis*, 322 P.3d 1245-46.

officers corroborated the anonymous tipster's allegations that the odor of growing marijuana emanated from Brooks's mobile home and that Styrofoam covered its windows. They further heard the sound of fans and ballasts coming from inside the mobile home and detached shed, which also emitted the odor of marijuana. From their training and experience, the officers knew that these observations likely were signs of a marijuana grow operation. Thus the trial court correctly determined that the supporting affidavit established probable cause to believe that a violation of the Uniform Controlled Substances Act was occurring inside the mobile home and detached shed.

Arguing to the contrary, Brooks relies on *State v. Neth*, 165 Wn.2d 177, 185, 196 P.3d 658 (2008). In *Neth*, our Supreme Court held that probable cause to search an automobile was lacking where a police officer had observed "[i]nnocuous objects that are equally consistent with lawful and unlawful conduct," such as empty plastic bags that might be used to store illegal drugs. 165 Wn.2d at 185. According to Brooks, the smell of marijuana is equally consistent with the lawful possession of medical marijuana and the unlawful possession of marijuana.

But *Fry* contradicts Brooks's argument. Despite the Medical Use of Cannabis Act, marijuana possession remained a crime in Washington.[7] *Fry*, 168 Wn.2d at 7. By invoking an affirmative defense based on medical marijuana use, a defendant admits to "commit[ing] a criminal act but pleads an excuse for doing so." *Fry*, 168 Wn.2d at 7. Thus the smell of marijuana is not equally consistent with lawful conduct. Brooks's argument fails.

---

[7] We acknowledge that Initiative Measure No. 502 substantially decriminalized marijuana possession. *See* RCW 69.50.401(3); LAWS OF 2013, ch. 3, § 1. But the initiative does not bear on our analysis because it took effect after Brooks's offense occurred.

8

## II. INEFFECTIVE ASSISTANCE OF COUNSEL AND SENTENCING ISSUES ARE MOOT

Brooks next argues, and the State apparently concedes, that he received ineffective assistance of counsel when his attorney failed to argue that his convictions for manufacture of a controlled substance and possession of a controlled substance constituted the same criminal conduct for sentencing purposes. Brooks also appears to argue that the sentencing court erred by ordering Brooks to refrain from consuming or possessing alcohol as a community custody condition. Because Brooks has been released into the community and is not on community custody, these issues are moot.

"'A case is moot if a court can no longer provide effective relief.'" *State v. Ross*, 152 Wn.2d 220, 228, 95 P.3d 1225 (2004) (quoting *State v. Gentry*, 125 Wn.2d 570, 616, 888 P.2d 1105 (1995)). We take judicial notice of public records revealing that Brooks's probation is closed. ER 201; Docket Entry, *State v. Brooks*, No. 12-1-00105-7 (Wash. Super. Ct. Mason County Sept. 27, 2013) (noting the entry of a document captioned, "Probation Report Supervision Closed") (accessed via Appellate Court Records and Data System (ACORDS)). Because Brooks has been released from confinement and he is no longer on community custody, we cannot provide effective relief. Therefore the sentencing issues he raises are moot.

No. 44549-2-II

Affirmed.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Worswick, J.

We concur:

Hunt, P.J.

Maxa, J.

10